Metcalf, J.
The single question in this case is, whether the eastern bank or the centre of the west branch of Farming-ton River is the western boundary of the town of Tolland. And this depends on the construction and effect of the statute of 1754, incorporating the town of Granville. By that statute, the north line of the incorporated tract ran “ to a hemlock tree marked, with stones about it, on the west branch of Far-mington River,” which was declared to be “ the northwest corner of said tract.” From this corner, the west line of said tract ran southerly, “ bounding on said west branch of Farmington River, as the same runs, to a great hemlock tree at the colony line, being the southwest corner of said tract.” By St. 1784, c. 74, the town of Granville was divided into three parishes; and the western line of the west parish was the western line of the town. By St. 1810, c. 14, the west parish, as known by its then existing bounds, was incorporated as a town, by the name of Tolland. The western boundary line of Gran-ville, as established by St. 1754, is therefore the present western boundary line of Tolland. And, in our opinion, that line is the centre or thread of the river.
A grant of land, bounded on a stream not navigable, car lies the exclusive right and title of the grantee to the centre of the stream, unless the terms of the grant clearly denote the intention to stop at the edge or margin. Angell on *496 Watercourses, (4th ed.) §§ 11, 23; 3 Kent Com. (7th ed.) 516. And this is so, although the monuments are described as standing on the margin or bank of the stream. By Walworth, Chancellor, 4 Hill, 375; Coovert v. O’Conner, 8 Watts, 470; Lowell v. Robinson, 4 Shepley, 357; Lunt v. Holland, 14 Mass. 149; Knight v. Wilder, 2 Cush. 199. The case of Luce v. Carley, 24 Wend. 451, cannot be distinguished from this. In that case, the granted premises were described by a line running to a hemlock stake, “ standing on the east bank of the river; from thence down the river, as it winds and turns,'24 chains and 94 links, to a hard maple tree,” &c. It was held that the grantee took to the centre of the river. “ It is never thought,” said the court, “ that monuments, mentioned in such a deed as occupying the bank of the river, are meant by the parties to stand on the precise water line, at its high or low mark. They are used rather to fix the termini of the line which is described as following the sinuosities of the stream, leaving the law to say whether the one half of the river shall be included. Where the grant is so framed as to touch the waters of the river, and the parties do not expressly except the river, one half the bed of the river is included by construction of law. If the parties mean to exclude it, they should do so by express exception.” So in Noble v. Cunningham, 1 McMullan Eq. Rep. 289, it was held that no intention to exclude the bed of an unnavigable watercourse can be inferred from the fact that the corners of the granted land, as described in the grant, are marked trees growing on the bank. The court said, “ the corners were marked on the bank, of necessity. No corners could be put in the river. The river is- laid down as an open line from corner to corner, which in fact makes it a boundary, and carnes the line to the thread of the stream, or centre of the boundary.”
The same construction that is given to grants is given to statutes which prescribe the boundaries of incorporated territories. Inhabitants of Ipswich, petitioners, 13 Pick. 431.
According to the agreement of the parties, the case is to stand for trial.